PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. et al. v. SOHMER, State Comptroller.

(Supreme Court, Appellate Division, Third Department. September 27, 1912.)

EMINENT DOMAIN (§ 85*)—BARGE CANAL.

Under Laws 1908, c. 195, § 2, authorizing allowance for damage caused by construction of a barge canal, the state is liable to a railroad company for the cost of maintaining and renewing a bridge to be erected by the railroad company across the canal.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 221–226; Dec. Dig. § 85.*]

Betts, J., dissenting.

Certiorari by the People of the State of New York, on relation of the New York Central & Hudson River Railroad Company and another, to review action of William Sohmer, as Comptroller of the State of New York, in refusing to audit a certain item. Determination reversed, with directions.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Thomas D. Watkins, of Utica, for relators.

Thomas Carmody, Atty. Gen., for comptroller.

SMITH, P. J. This is a certiorari proceeding to review the action of the comptroller in refusing to audit an item of $32,775.57 for the maintenance and renewal of a certain bridge to be erected by relators across the Barge Canal in the town of Montezuma, county of Cayuga, upon the ground that the said item is illegal. The comptroller, in auditing the claim, deducted said amount from the total sum of $350,474.09, and certified to the state treasurer the balance of the claim, with interest. It appears that the state had appropriated for the use of the Barge Canal a portion of the right

of way in which relators had an easement for their railroad, and that thereupon, pursuant to statute, relators entered into an agreement with the state's special examiner and appraiser, by which they agreed to erect and maintain a suitable bridge over the canal for the said total sum mentioned.  Attached to and made a part of this agreement was a detailed statement, entitled "Engineer's Estimate," of the damages sustained by the relators on account of this bridge construction, wherein appeared as "maintenance and renewals" the item first mentioned, the legality of which is now questioned.  This agreement was subsequently approved by the superintendent of public works and by the canal board.  The board later rescinded its approval of this agreement, and still later rescinded its resolution of rescission; this last action being, as claimed by respondent, with the understanding of both parties that this item would then be disallowed by the comptroller and that certiorari proceedings would then be brought by relators to review his determination, and thus obtain a decision as to the legality of the item in dispute.  Relators afterwards applied to the respondent to certify said total amount named to the state treasurer for payment, and after a hearing had thereon before said comptroller he declined to certify said agreement for the full amount, on the ground that the item questioned could not be lawfully included therein.

Was this expenditure, then, which was concededly for maintenance and renewals, properly payable by the state to these relators?  This sum was admittedly actually no more than sufficient to reimburse relators for the damages sustained by them on account of the crossing of their tracks by the Barge Canal.  Instead of a solid earth right of way upon which to rest their tracks, and which is practically imperishable, the state has forced them to accept a steel bridge, which requires frequent expenditures to maintain, and must be entirely renewed, according to good engineering practice, about every 30 years or oftener.  The relators accordingly claim that, unless the item in question be included in the comptroller's warrant and paid for, the constitutional provision against taking private property for public use without just compensation is violated, and, furthermore, that in the Barge Canal Act the intention of the state is made clear to give full indemnity for property actually taken and injury caused by any appropriation.

One of the questions presented, therefore, is:  What was the intent of the Legislature in the provisions made for the taking of property and the payment therefor and for damages caused thereby?  By section 2 of chapter 195, Laws of 1908, a special examiner and appraiser of lands to be taken for the new Barge Canal was authorized to fix and determine with the owner "upon a fair valuation of any specific portion of such property, structures, waters or property or rights connected therewith or damage resulting to any such owner or occupant and may agree upon a price to be paid therefor by the state and accepted by the said respective owner or owners in full compensation for such specific property or rights or for damage caused by said work or improvement."  And it is further provided

that upon such agreement as to the sum to be paid the comptroller should audit such sum upon the approval of the canal board.

From this statute the necessary inference would seem to follow that it was the intention of the state to make full compensation to an owner of property taken, both for the value of the land taken and for the damage caused by the taking thereof. Within these provisions no exception is made as to property of any public service corporation, so that whatever damage has been caused to this railroad company by the taking of this land would seem to be a proper subject of agreement between the company and the special examiner, and the agreement thus made would seem to be authorized.

With the conclusion reached that the sum allowed for maintenance and repairs is a fair compensation for the injury done to the relator, it follows that the determination of the comptroller should be reversed, and the comptroller directed to audit the said claim as approved by the canal board.

Determination of the comptroller reversed, with $50 costs and disbursements, and comptroller directed to audit the claim as approved by the canal board. All concur, HOUGHTON, J., in result only, except BETTS, J., who dissents.